IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

UNITED STATES OF AMERICA,       )
                                )
                Plaintiff,       )
                                )
        v.                       )        Criminal Action No.
                                )        10-00073-01-CR-W-NKL
GERLARMO CAMMISANO,             )
                                )
                Defendant.       )

## REPORT AND RECOMMENDATION
## TO ACCEPT DEFENDANT'S GUILTY PLEA

On April 28, 2010, I held a change-of-plea hearing after this case was referred to me by United States District Judge Nanette Laughrey. I find that Defendant's plea was voluntary and therefore recommend that it be accepted.

## I. BACKGROUND

On March 9, 2010, an indictment was returned, charging Defendant with, inter alia, one count of conducting an illegal gambling business, in violation of 18 U.S.C. §§ 1955 and 2. A change-of-plea hearing was held on April 28, 2010. Defendant was present, represented by retained counsel Robin Fowler. The government was represented by Assistant United States Attorney Jess Michaelsen. The proceedings were recorded and a transcript of the hearing was filed on April 30, 2010.

## II. AUTHORITY OF THE COURT

The authority of federal magistrate judges to conduct proceedings is created and defined by the Magistrates Act, 28 U.S.C. § 636. Besides certain enumerated duties, the Act provides that a "magistrate may be assigned such additional duties as are not inconsistent with the Constitution and

the laws of the United States." 28 U.S.C. § 636(b)(3).

The Eighth Circuit, following the reasoning of several other circuits, has held that magistrate judges may preside over allocutions and pleas in felony cases, so long as certain procedural safeguards are met. United States v. Torres, 258 F.3d 791, 795-96 (8th Cir. 2001); see also United States v. Dees, 125 F.3d 261 (5th Cir. 1997), United States v. Williams, 23 F.3d 629 (2d Cir. 1994). The reasoning applied by the appellate courts relies upon previous opinions by the United States Supreme Court that conducting jury *voir dire* falls within a magistrate judge's "additional duties" when the defendant has consented. See Torres, 258 F.3d at 795 (citing Peretz v. United States, 501 U.S. 923 (1991); Gomez v. United States, 490 U.S. 858 (1989)).

In Peretz, the Supreme Court held that when a defendant consents to a magistrate judge's involvement in *voir dire*, he waives any objection based on his right to have an Article III judge hear his felony case. 501 U.S. at 936. Moreover, the availability of *de novo* review by a district judge preserves the structural guarantees of Article III. Torres, 258 F.3d at 795. Applying the Peretz holding and adopting the reasoning of Williams, the Eighth Circuit held that the acceptance of guilty pleas bears adequate relationship to duties already assigned by the Magistrates Act in that "[a]n allocution is an ordinary garden variety type of ministerial function that magistrate judges commonly perform on a regular basis." Id. (quoting Williams, 23 F.3d at 633). Plea allocutions are substantially similar to evidentiary proceedings explicitly assigned by the Act. Id. at 796 (citing Dees, 125 F.3d at 265). Even if taking a guilty plea were considered to be of greater importance than those duties already assigned, the consent of the defendant saves the delegation. Id. "Consent is the key." Id. (quoting Williams, 23 F.3d at 633).

The Torres court also addressed the implications of such a delegation for Article III's case

2

and controversy clause. Id. Because plea proceedings are submitted to the district court for approval, the court retains ultimate control over the proceedings and is not bound to accept a plea taken by a magistrate judge. Id. Moreover, the district court's *de novo* review of the plea proceedings contributes to the ministerial nature of the magistrate judge's role. Id.

Based on the above, I find that, with the consent of the defendant, the District Court may properly refer a felony case to a Magistrate Judge for conducting a change-of-plea hearing and issuing a report and recommendation on whether the plea should be accepted.

### III.  FINDINGS OF FACT

1.    The parties consented to the delegation of the change of plea to the magistrate judge (Tr. at 3).

2.    On March 9, 2010, an indictment was returned charging Defendant with, inter alia, one count of conducting an illegal gambling business, in violation of 18 U.S.C. §§ 1955 and 2 (Tr. at 4-7).  The court read the charge against Defendant and Defendant indicated that he understood the nature of the charge (Tr. at 4-7).

3.    The statutory penalty for this charge is not more than five years imprisonment, a fine of up to $250,000, a supervised release term of not more than 3 years, and a $100 mandatory special assessment fee (Tr. at 7).  Defendant was informed of the penalty range and indicated that he understood (Tr. at 7).

4.    Defendant was advised of the following:

a.    That he has a right to a trial by jury of at least 12 individuals and that their verdict must be unanimous (Tr. at 8);

b.    That he has the right to assistance of counsel throughout the trial (Tr.

at 8);

        c.      That Defendant is presumed innocent, and the government has the burden of coming forward to prove Defendant's guilt beyond a reasonable doubt (Tr. at 8-9);

        d.      That Defendant's attorney would have the opportunity to cross-examine the government's witnesses (Tr. at 8);

        e.      That Defendant has the right to testify but does not have to, and that the jury could not make an adverse inference from the fact that Defendant may not testify at trial (Tr. at 9);

        f.      That Defendant has the right to subpoena witnesses to testify on his behalf (Tr. at 9); and

        g.      That Defendant has the right to appeal any conviction to the Eighth Circuit Court of Appeals (Tr. at 10).

5.      Defendant was informed and understood that by pleading guilty, he was giving up all of the rights described above (Tr. at 10).

6.      Defendant was informed that during the change-of-plea proceeding, he would be placed under oath and questioned by counsel and the judge (Tr. at 10). Defendant was further informed that he must answer questions truthfully while under oath (Tr. at 10). Defendant stated that he understood (Tr. at 10).

7.      Government counsel stated that if this case were to be tried, the government's evidence would be that between March 1, 2006 and March 31, 2009, Defendant (also known as "Jerry Cammisano" and "Rancher") conducted an illegal sports bookmaking business that was

operated in the Kansas City, Missouri, metropolitan area and elsewhere (Tr. at 12). Defendant was the organizer or leader of this particular illegal sports bookmaking business and oversaw the bookmaker agents involved in the business (Tr. at 12).

As part of the business, the bookmakers provided their bettors with the 1-800 toll-free number, 1-800-335-9003 ("bettor number"), as well as the website best24b.com (Tr. at 12). The bookmakers also provided their bettors with an account number and a password to use in order to place wagers on sporting events; they could call the "bettor number" or access the website to place wagers (Tr. at 12). The bettors could also use their account number to access their wagering history or obtain other account information (Tr. at 12). The bookmakers used a separate 1-800 number, 1-800-330-5667 ("bookmaker number"), as well as the website best24b.com to track their bettors' activities and account balances (Tr. at 12). The bookmakers had their own user name and password that they used in order to access their bettor's information and make changes to the bettor's accounts, if necessary (Tr. at 12-13).

Both toll free 1-800 numbers were routed through Phoenix International Teleport Satellite Service, Inc. to Elite Sports, which is located in Costa Rica (Tr. at 13). Elite Sports acted as a virtual wire room for the illegal sports bookmaking operation, taking wagers from the bettors and keeping electronic records of the bettorS' activities (Tr. at 13). Results were located on Elite Sports' computer servers in Costa Rica (Tr. at 13). Elite Sports did not have in interest in the outcome of the wagers, but instead charged the illegal sports bookmaking business a price per head for managing each bettor's account (Tr. at 13). Defendant collected this fee from the bookmakers and then the local bookmakers would pay out or collect cash in person from their bettors on a weekly basis (Tr. at 13). Defendant was also responsible for managing the following six accounts: the Brad account;

Dr. Bob; the Dud Light account; the George account, the Marty; and the Sandy account (Tr. at 13).

The bettors in this illegal sports bookmaking business wagered over $3,584,895.79 during the course of the business (Tr. at 13). Defendant would pay out to the bookmakers a percentage of the business' winnings at the end of each sporting season (Tr. at 13-14).

8. Defense counsel stated that he had reviewed the government's file and felt comfortable recommending his client plead guilty (Tr. at 11, 14).

9. Defendant was placed under oath (Tr. at 11). Defendant stated that between the dates of March 1, 2006 and April 1, 2009, he knew and dealt with individuals using the code names "Dud Light," "Dr. Bob," "Sandy," "Brad," and "George" (Tr. at 16). During this time, Defendant knowingly conducted, financed, managed, supervised, directed and owned all or part of an illegal gambling business (Tr. at 16). Such business involved illegal bookmaking in violation of the laws of Missouri (Tr. at 16). The business also involved at least five or more persons who conducted, financed, managed, supervised, directed and owned all or part of the gambling business (Tr. at 16). Operation of the business lasted a period in excess of thirty days and gross revenues for at least one day was $2,000 (Tr. at 16-17).

In his own words, Defendant stated he organized and operated the gambling business as described in the Indictment (Tr. at 17).

10. Defendant had reviewed the plea agreement with his attorney and stated he understood the terms of the agreement (Tr. at 18). I also reviewed the terms of the plea agreement with Defendant (Tr. at 18-22, 24-25). As part of the agreement, the Government agreed to dismiss Counts Two through Seven against Defendant at the time of sentencing (Tr. at 21).

11. All promises made by the government were contained within the plea agreement (Tr.

at 22-23). No one had made any threats or any other promises in order to get Defendant to plead guilty (Tr. at 23).

12.     Defendant was satisfied with Mr. Fowler's performance (Tr. at 23). There is nothing Defendant asked Mr. Fowler to do that Mr. Fowler did not do (Tr. at 23). Likewise, there is nothing Mr. Fowler has done that Defendant did not want him to do (Tr. at 23).

13.     Defendant is 56 years old (Tr. at 34). He received a high school education (Tr. at 23). Defendant has no physical or mental health concerns that would prevent him from entering an intelligent and voluntary plea of guilty (Tr. at 23). Defendant was not under the influence of drugs or anything else that would cloud his ability to intelligently waive his right to a jury trial (Tr. at 23-24).

14.     Defendant tendered a plea of guilty to the crime charged in Count I of the indictment (Tr. at 25).

15.     The parties waived the fourteen-day objection period to the Report and Recommendation (Tr. at 25-26).

## V.  ELEMENTS OF THE CHARGED OFFENSE

The elements necessary to sustain a conviction for conducting an illegal gambling business include: (1) the gambling business violates the law of the state in which it is conducted; (2) the gambling business involves five or more persons who conduct, manage, supervise, or direct such business; and (3) the gambling business has been in operation for more than thirty days or has a gross revenue that exceeds two thousand dollars in any one day. U.S. v. Sutera, 933 F.2d 641, 645 (8th Cir. 1991).

### V.  CONCLUSION

Based on the above, I make the following conclusions:

1.     The district court may lawfully refer this case to a magistrate judge for issuance of a report and recommendation on whether Defendant's guilty plea should be accepted.

2.     Defendant has consented to having his plea taken by a magistrate judge.

3.     Defendant knowingly and voluntarily pleaded guilty to conduct establishing every element of the crime charged in Count I of this indictment.

Therefore, it is

RECOMMENDED that the court, after making an independent review of the record and the applicable law, enter an order accepting Defendant's guilty plea and adjudging Defendant guilty of the offense charged.

_/s/ Robert E. Larsen_
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
April 30, 2009